IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINO DiMATTEO, | ) | CASE NO. 5:10 CV 1261 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of

Social Security denying the applications of the plaintiff, Lino DiMatteo, for disability

insurance benefits and supplemental security income.  The parties have consented to

magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of

the Commissioner, found that DiMatteo had severe impairments consisting of diabetic

neuropathy and radiculopathy.[1]  The ALJ made the following finding regarding DiMatteo's

residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform the full range of sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a).[2]

---

[1] Transcript ("Tr.") at 14.

[2] *Id.* at 15.

The ALJ decided that this residual functional capacity precluded DiMatteo from performing his past relevant work as a pharmacist.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that DiMatteo could perform.[4]  The ALJ, therefore, found DiMatteo not under a disability.[5]

DiMatteo asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, DiMatteo argues that:

- The ALJ failed to incorporate into the residual functional capacity finding limitations the use of DiMatteo's hands and feet.

- The ALJ failed to articulate sufficient reasons for discounting DiMatteo's credibility.

- The ALJ failed to call a medical expert to testify at the hearing skilled in neurology.

- The ALJ improperly interpreted the vocational expert's testimony in finding that DiMatteo had skills transferable to other jobs.

I conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[3] *Id.* at 17.

[4] *Id.*

[5] *Id.* at 18.

## Analysis

**A.      Substantial evidence supports the ALJ's residual functional capacity finding.**

The ALJ recognized that DiMatteo's diabetic neuropathy and other problems impaired his physical functioning and restricted him to jobs involving sedentary work.[6]  DiMatteo argues that the ALJ's residual functional capacity finding was not sufficiently restrictive.[7]

Substantial evidence supports the ALJ's determination.  The ALJ identified DiMatteo's impairments, including problems with his feet, legs, left arm and neck, and addressed the medical evidence evaluating them.[8]  The ALJ also recognized the state agency physicians' opinions – the only opinion evidence of record concerning DiMatteo's physical functioning.[9]  The state agency physicians opined that DiMatteo could actually perform a restricted range of light work.[10]  The ALJ determined, however, that DiMatteo's restrictions were even greater, and restricted him to sedentary work.[11]

DiMatteo posits, however, that the ALJ did not go far enough and should have included a limitation that he be allowed to elevate his legs one hour a day.[12]  But DiMatteo

---

[6] *Id.* at 15.

[7] ECF # 15 at 13-16.

[8] Tr. at 14-15.

[9] *Id.* at 17.

[10] *Id.* at 214, 232.

[11] *Id.* at 15.

[12] ECF # 15 at 15, 16.

does not identify medical evidence, much less a medical opinion, indicating such elevation had to occur during the workday.  As the ALJ noted, DiMatteo testified that he elevated his legs for one hour a day.[13]  The ALJ reasonably concluded that no medical evidence existed requiring that DiMatteo be allowed to elevate his legs for one hour during the actual workday.

DiMatteo also argues, fairly generally, that the ALJ's analysis of his complaints was not sufficiently specific.[14]  DiMatteo's argument does not acknowledge that, by limiting him to sedentary work, the ALJ necessarily restricted him from significant lifting or walking, which accommodated the decreased sensation in his legs and his weakened left arm.[15] DiMatteo also maintains that sedentary work likely necessitates focusing the head in a certain direction or at a certain angle for extended periods of time[16] but does not identify any authority to support that conclusion.  Accordingly, DiMatteo does not identify error in the ALJ's finding.

Ultimately, the ALJ restricted DiMatteo to a range of exertional work that by definition is not physically exacting and can be accomplished by persons with significant physical functional impairments.  DiMatteo does not show how he would require even

---

[13] Tr. at 16, 32.

[14] ECF # 15 at 15.

[15] *Id.* at 15-16.

[16] *Id.* at 16.

greater physical restrictions.    Thus,  substantial  evidence  supports  the  ALJ's  residual

functional capacity finding.

**B.      Substantial evidence supports the ALJ's credibility determination.**

DiMatteo also challenges the ALJ's credibility assessment.[17]  An ALJ has the unique

opportunity to observe a claimant's demeanor, and an ALJ's credibility determinations about

a claimant are accorded "great weight."[18]    A reviewing  court  may  not  disturb  the  ALJ's

credibility determination absent compelling reason.[19]

Substantial evidence supports the ALJ's credibility determination in this case.  As the

ALJ noted, DiMatteo testified that his condition was so severe that he would be bedridden

for a day if he walked 3-4 blocks, was only capable of going to the library for a couple  of

hours a day, and needed to sleep 2-3 hours a day.[20]  The ALJ recognized that DiMatteo's

neuropathy caused symptoms, but the degree of symptoms described was not fully credible.[21]

Indeed, DiMatteo reported to Dr. Lindsay that he walked one to two miles per day[22] and

reported to Dr. Sardo that his medication kept him functional and that he could do housework

---

[17] *Id.* at 17-18.

[18] *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

[19] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[20] Tr. at 25, 31.

[21] *Id.* at 16.

[22] *Id.* at 179.

and walk.[23]  In addition, DiMatteo asserted a disability onset date of May 5, 2005, but continued to work part-time in 2005 and 2006.[24]  Moreover, testing over the years showed DiMatteo to have full strength in his legs[25] as well as a steady gait.[26]

**C.     Substantial evidence supports the ALJ's decision not to call an expert in neurology at the hearing.**

DiMatteo argues that a neurologist should have testified at the hearing as a medical expert.[27]  Dr. Lesyk, the psychologist who testified at the administrative hearing, did not address DiMatteo's physical restrictions.  But, as the medical record provided medical sources notes of DiMatteo's descriptions of his activities,[28] as well as in their direct observation of his capabilities,[29] the record supported the ALJ's credibility determination without an additional testifying medical expert.  The ALJ acted within his proper discretion in deciding not to call an additional medical expert at the hearing.[30]

---

[23] *Id.* at 181.

[24] *Id.* at 23-24.

[25] *Id.* at 181, 229, 321.

[26] *Id.* at 229.

[27] ECF # 15 at 18.

[28] Tr. at 179, 181.

[29] *Id.* at 181, 229, 321.

[30] *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009), citing 20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927 (f)(2)(iii).

**D.**     **Substantial evidence supports the ALJ's determination that DiMatteo could perform a significant number of jobs available in the national and regional economies.**

The ALJ considered the testimony of the vocational expert, and found that DiMatteo could perform work available in the national economy – specifically charge account clerk, telephone quote clerk, and food and beverage clerk jobs.[31]  DiMatteo argues that the ALJ erred in making this determination,[32] but substantial evidence supports the ALJ's step five finding.

DiMatteo submits that the ALJ erred because he found that certain of DiMatteo's skills were transferable but then found he could perform jobs that did not require these skills.[33] DiMatteo confuses two separate analyses.  As DiMatteo correctly notes, the ALJ did ask the vocational expert whether DiMatteo had any transferable skills, and the vocational expert testified that DiMatteo's pharmacist skills would be fully transferrable into other occupations involving the sciences, physical sciences, medical caring, or chemical processing.[34]  This does not mean that DiMatteo could only perform these jobs; this simply meant that DiMatteo's skills would qualify him to do these jobs.[35]  The transferability of skills is decisive in the conclusion of "disabled" or "not disabled" in "only a relatively few

---

[31] *Id.* at 18.

[32] ECF # 15 at 18-19.

[33] *Id.* at 18.

[34] Tr. at 37.

[35] *See*, 20 C.F.R. § 404.1658(d).

instances" because, even if it is determined that a claimant has no transferable skills, a finding of "not disabled" may still be based on the claimant's ability to do unskilled work.[36] Accordingly, the ALJ asked the vocational expert a follow-up question about whether an individual with DiMatteo's restrictions could perform the jobs to which DiMatteo's skills would transfer.[37]  The vocational expert testified that she had identified a number of jobs to which DiMatteo's skills would transfer, but his physical restrictions would keep him from performing them.[38]

That, however, did not end the inquiry, as the ALJ then asked whether there were any unskilled jobs an individual with DiMatteo's restrictions could perform.[39]  In response, the vocational expert identified three unskilled, sedentary work jobs that such an individual could perform.[40]  As DiMatteo does not, and cannot, argue that if he can perform unskilled work, the transferability of his skills becomes irrelevant.

Substantial evidence supports the ALJ's step five finding.  Accordingly, the ALJ's determination should be affirmed.

---

[36] SSR 82-41.

[37] Tr. at 38-40.

[38] *Id.* at 41.

[39] *Id.*

[40] *Id.* at 41-42.

## **Conclusion**

Substantial evidence supports the finding of the Commissioner that DiMatteo had no disability.  The decision of the Commissioner denying DiMatteo disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.


Dated:  November 1, 2011                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge